EIBE D. CORDTS and wife

*v.*

PHILIP H. HARGRAVE and others.

If an involuntary grantee is under no obligation to indemnify his grantor against a mortgage on the premises, the mortgagee is not entitled to such indemnity.

---

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. G. Ackerson, Jr.*, for complainants.

*Mr. W. Brinkerhoff*, for defendant Wilson.

THE CHANCELLOR.

On the 1st of March, 1871, Mary H. Cordts, with her husband, conveyed to John A. Kamping certain land belong-

Cordts v. Hargrave.

ing to her in Rutherford Park, in Bergen county, which she had sold to him. To secure the payment of $7,500 of the purchase-money, with the interest, he gave to her his mortgage of that date on the property. On the 11th of September in that year, Kamping and his wife conveyed the property to Joseph Wilson. The deed contained a statement that Wilson assumed the payment of the mortgage to Mrs. Cordts. Wilson, by deed dated on the 15th of the last-mentioned month, conveyed the property to Philip H. Hargrave.

The bill is filed to foreclose the mortgage, and it seeks a personal decree for deficiency against Wilson. He, by his answer, denies all liability for deficiency, alleging that he was entirely ignorant of the execution of the deed from Kamping and his wife to him; that it was never delivered to him, or to any person who was authorized to receive it for him; that he never accepted it, and never assumed to pay the mortgage. He further says that he is not acquainted with Kamping and his wife, or either of them, and never had any business relations with them; that Hargrave was the person to whom the deed should have been made, he having purchased the property from Kamping, and that the deed from Kamping and his wife to him (Wilson), was made with a fraudulent intent and for the purpose of hindering and defrauding the creditors of Hargrave. He further states that the first information he had of the existence of the deed was received from Hargrave, and that he at once protested against it and declared his unwillingness to permit the title to remain in his name, and that, in order to relieve himself from it, he, by the advice of Hargrave's lawyer, executed a deed for the property to Hargrave.

The evidence shows very clearly that Hargrave bought the property from Kamping, and caused the deed to be made to Wilson without Wilson's knowledge or consent; that the deed was delivered to Hargrave and not to Wilson, and that immediately (and it appears to have been a day or two after the deed was delivered to Hargrave) the latter

Cordts *v.* Hargrave.

communicated to Wilson the fact that it had been made to him, and that Wilson at once protested against it.

Wilson testifies that he did not buy the property nor authorize any one to buy it for him; that the deed was never delivered to him; that he never accepted it, nor did any person in his behalf; that it was not made by his direction or consent; that, as soon as he ascertained from Hargrave that there was such a deed, he told Hargrave that he would not receive it, that he would not accept it, and that Hargrave would have to take the property himself; that Hargrave told him he had put the property in Wilson's name because he (Hargrave) was embarrassed. He further swears that he had nothing to do with recording the deed, and does not know who caused it to be recorded. He swears that he gave no consideration for the deed from Kamping and wife, and knew nothing of that transaction, and that he conveyed the property to Hargrave without consideration, at the request of Hargrave and Hargrave's lawyer, Fox, merely to divest himself of the title. He is fully corroborated by Hargrave and Fox.

The complainants have not produced Kamping, but, to the evidence adduced by Wilson, oppose merely Mr. Cordts's testimony that he notified Wilson by written notice to pay interest on the mortgage, and, receiving no reply, called on him; and that he told Cordts that he (Wilson) must see Hargrave about the interest, and requested Cordts to call again. Cordts also says, however, that Wilson told him that it was not his business to pay the interest, or said something to that effect.

Wilson swears that he did not receive any of the written notices, and that, when Cordts called on him for the interest, he told him that Hargrave was the person to whom he should apply for it; that he himself knew nothing about it. He further testifies that he told him that he did not own the property; that he never asked him to call again, and, while he did not promise to see Hargrave about the interest, he

did say that if he should see Hargrave he would mention it to him.

It appears from the evidence (and it is uncontradicted) that the consideration of the deed from Kamping to Wilson was the conveyance by Hargrave to Kamping. of property (a lease, bar-room and fixtures, &c.) in the city of New York, belonging to the former, upon the possession of which the latter at once entered after the exchange was completed.

Both Hargrave and Fox testify that the deed from Kamping was delivered to Hargrave in Fox's office in New York. Fox says that, according to his recollection, Wilson's name was inserted in the deed on the day when the deed was delivered and after it had been executed; that Wilson was not present; that Kamping said, " Whose name shall I put in?" and Hargrave answered, " Put in Joseph Wilson." Kamping then accepted as the grantee named in the conveyance of the property sold by him to Hargrave, a person with whom he had not bargained, to whom he had not sold the property, and who had not, as far as he knew, any interest therein, and to whom he did not deliver the deed, and who had not authorized or consented to the insertion of his name therein or the delivery of the deed to any one for him.

Under the circumstances, Wilson is under no obligation whatever to indemnify.Kamping against Mrs. Cordts's mortgage, and therefore there is no liability on his part to her. *Crowell* v. *Hospital of St. Barnabas*, 12 *C. E. Gr.* 650; *Culver* v. *Badger*, 2 *Stew.* 74.